UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARIA MOSBY-NICKENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:11-cv-00263 (ABJ) |
| | ) | |
| HOWARD UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Maria Mosby-Nickens ("Plaintiff") brings this action against defendant Howard University ("Howard"). Plaintiff was a graduate student in Howard's Counseling Psychology doctoral program and was dismissed from the program in 2009 after failing to obtain the degree during her twelve years of study. Plaintiff alleges that: (1) Howard breached a contract with her by failing to comply with certain provisions of its rules and regulations handbook, and (2) Howard engaged in constructive fraud because its employee, plaintiff's initial academic advisor, made assurances to plaintiff on which she relied to her detriment. Howard filed an answer to the amended complaint on April 19, 2011, and now moves this Court for summary judgment on all counts. Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. # 13]. Because the Court finds that plaintiff has failed to proffer evidence to support essential elements of both her breach of contract and constructive fraud claims, it will grant defendant's motion for summary judgment.

I.      **Background**

Plaintiff, a resident of Maryland, spent more than a decade as a graduate student at Howard University in the District of Columbia. Am. Compl. ¶¶ 1–2. She matriculated in fall 1997, seeking to eventually advance to candidacy for a Ph.D. in Counseling Psychology. *Id.* ¶¶ 3, 9–10.

According to the Howard Graduate School of Political Science's Rules and Regulations for the Pursuit of Academic Degrees ("Graduate School Rules and Regulations"), an applicant must pass both a preliminary examination and a comprehensive examination, complete one approved externship and one internship, and submit an approved dissertation proposal in order to advance to candidacy for a doctorate degree. Graduate School Rules and Regulations, Ex. 4 to Def.'s Mot. at 16–21; *see* Mosby-Nickens Dep., Ex. 1 to Def.'s Mot. at 33:4–15, 37:21–38:4. In addition, an applicant must complete a certain number of credits in prerequisite graduate level courses. Graduate School Rules and Regulations at 19–20. However, only courses pursued within the seven years prior to the term in which the student presents herself for the final oral examination are credited toward fulfillment of the degree requirements. *Id.* at 17. Courses completed more than seven, but less than ten, years earlier may be restored and counted toward the degree requirements, but only if the student completes certain procedures to make those courses viable again. *Id.* "Under no circumstances, however, may a student receive credit toward the degree for a course which the student pursued more than ten . . . years prior to the time the student presents . . . herself for the [] final examination." *Id.*

Plaintiff began taking prerequisite courses in fall 1997, and continued when she became a full-time student in fall 1999. Pl.'s Statement of Undisputed Material Facts ("Pl.'s SMF") [Dkt. # 23] ¶¶ 1–2; *accord* Def.'s Statement of Undisputed Material Facts ("Def.'s SMF") [Dkt. # 13]

¶¶ 1–2. Upon plaintiff's admission to the graduate school, Dr. Aaron Stills was assigned as her advisor. Pl.'s SMF ¶ 3; *accord* Def.'s SMF ¶ 3. Howard contends that Dr. Stills remained plaintiff's academic advisor throughout her enrollment in the program, Def.'s SMF ¶ 4; Stills's Aff, Ex. 3 to Def.'s Mot. ¶ 4. Plaintiff maintains that Dr. Ibrahim replaced Dr. Stills as her academic and dissertation advisor between 2000 and 2004, and that after 2004 she was left without an advisor. Pl.'s SMF ¶ 4. Nonetheless, plaintiff states that she continued to meet with Dr. Stills at various times each semester. Mosby-Nickens Dep. at 118:15–16.

Plaintiff took her preliminary examination in fall 2000, Mosby-Nickens Dep. at 35:7–11, completed her comprehensive examination in fall 2001, *id.* at 37:7–9, and completed her externship at Howard University's counseling center in spring 2002, *id.* at 42:18–43:4. On August 1, 2003, nearly six years after matriculating at Howard, plaintiff began a year-long internship at Emory University. *Id.* at 41:18–42:11. When plaintiff returned from the internship in fall 2004, the prerequisite course credits she had earned seven years earlier in the fall 1997 semester were no longer viable. *See* Graduate School Rules and Regulations at 17; Pl.'s SMF ¶ 17. Plaintiff acknowledges that she was "fully aware" of the course viability policy. Pl.'s SMF ¶ 10–11. Nonetheless, plaintiff waited until the spring 2006 semester before beginning to email her former professors, requesting that they sign a petition form that would enable her to restore her unviable course credits. Mosby-Nickens Dep. at 55:17–57:4. In one case, even after a professor agreed by email to provide a signature, plaintiff failed to physically take the master form to him, and so she never actually secured the signature. *Id.* at 104:1–106:21. By that time, plaintiff's credits for classes taken in the spring 1998, fall 1998, and spring 1999 semesters had also expired. *See* Ex. 4 to Def.'s Mot. at 17. In addition, plaintiff waited until December 2006,

more than two years after completing her externship, to submit her dissertation proposal. Mosby-Nickens Dep. at 59:18–20; Pl.'s SMF ¶ 19.

Then, in fall 2009, twelve years after first matriculating at Howard, and without completing the restoration process for the expired credits, plaintiff elected to take one semester of leave from school. Am. Compl. ¶ 15; Pl.'s SMF ¶ 18; Mosby-Nickens Dep. at 107:20–108:6, 108:18–109:18; *see* Mosby-Nickens Dep. at 125:14–126:12. At that time, the course credits she had earned between fall 1997 and spring 1999 were ten years old and thus permanently unviable. Mosby-Nickens Dep. at 125:18–126:8. In addition, the courses from the fall 1999 to spring 2002 semesters were more than seven years old and would have required restoration in order to count toward her degree. *Id.* at 126:9–12. As soon as plaintiff failed to register for courses, she was dismissed from the Ph.D. program. Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Opp.") at 8.

Plaintiff contends that Dr. Stills led her to believe that all of her courses could be made viable despite their age, as long as good faith efforts were being made to restore them. Mosby-Nickens Dep. at 118:10–119:16; Pl.'s SMF ¶ 21. Specifically, plaintiff alleges in an affidavit that Dr. Stills told her that he would intervene on her behalf and "obtain the faculty signatures" so that she could restore her expired credits. Mosby-Nickens Aff., Ex. 1 to Pl.'s Opp. ¶ 12. Dr. Stills denies ever making such a representation. Stills's Aff. ¶ 7.

Plaintiff commenced this action on January 28, 2011 and filed a two-count amended complaint on March 29, 2011. [Dkt. #7]. Count I alleges breach of contract and Count II alleges constructive fraud. Am. Compl. ¶¶ 18–39. Howard filed an answer on April 19, 2011, [Dkt. #

8], discovery closed on December 15, 2011, and Howard filed the motion for summary judgment that is currently before the Court on January 31, 2012.[1]   [Dkt. # 13].

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). However, the mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.*; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

Moreover, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon a motion, against a party who fails to make a showing

---

[1]   Defendant's original motion for summary judgment characterized Count II of the amended complaint as alleging actual fraud. The Court issued a minute order on April 12, 2012, directing the defendant to submit a supplemental memorandum addressing the question of whether the Court should grant summary judgment on Count II when construed as a constructive fraud claim, and it permitted plaintiff to file an opposition to the supplement. Defendant filed its supplemental memorandum on April 27, 2012, and plaintiff filed her opposition on May 14, 2012.

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. And "the moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 317–18.

### III. Analysis

#### A. Plaintiff's Breach of Contract Claim

Plaintiff's amended complaint alleges that there were a "number of gross irregularities in [her] matriculation" at Howard that give rise to a breach of contract. Am. Compl. ¶ 19. Specifically, plaintiff alleges that: (1) Howard failed to provide her with an "academic advisor following the completion of her one-year internship the fall of 2004"; (2) Howard "allowed her to register for dissertation writing courses" in violation of "Article VI, Section C of the Rules and Regulations for Pursuit of Academic Degrees in Graduate School"; and (3) Howard allowed her to continue to register for courses after her seventh year of study despite the provision in the Graduate School Rules and Regulations stating that students are to be dismissed after seven calendar years. Am. Compl. ¶¶ 21–27.

Howard contends that it is entitled to summary judgment because plaintiff "fails to have pled any facts describing and/or identifying either the terms of, or even the existence of, the contract she is alleging Defendant breached." Mem. of Points and Authorities in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") at 11. In plaintiff's opposition to Howard's motion for summary judgment, she asserts, for the first time, that "[t]he Graduate School Rules and

Regulations was the contract binding Howard University to the Plaintiff." Pl.'s Opp. at 4; Mosby-Nickens Aff. ¶ 7. Plaintiff further alleges that she refers to the Graduate School Rules and Regulations in her amended complaint and that they "constitute 26 pages of rules that Plaintiff and Howard University were required to follow." Pl.'s Opp. at 6. In support of this notion, plaintiff cites a single authority from the District of Columbia Court of Appeals for the broad proposition that "[i]t is well-settled that the relationship between a student and the University is contractual in nature." *Id.* at 5, citing *Manago v. Dist. of Columbia*, 934 A.2d 925 (D.C. 2007).

Although the relationship between a university and its students can be contractual in nature, *see Manago*, 934 A.2d at 927, citing *Basch v. George Washington University*, 370 A.2d 1364, 1366 (D.C. 1977), a plaintiff must nevertheless "allege sufficient facts to demonstrate . . . the terms of the contract." *Manago*, 934 A.2d at 927. Whether "a given section of [a student handbook] also becomes part of the contractual obligations between the students and the university . . . depend[s] upon general principles of contract construction." *Basch*, 370 A.2d at 1367. In *Basch*, the court found that language regarding "estimated" and "projected" tuition increases in a university bulletin transmitted to students did not bind the institution and prohibit additional increases. Moreover, many courts in other jurisdictions have been reluctant to construe university handbooks as binding, unchangeable contracts. *See, e.g.*, *Horne v. Cox*, 551 S.W. 2d 690, 692 (Tenn. 1977), quoting *Wright v. Tex. S. Univ.*, 392 F.2d 728, 729 (5th Cir. 1968) ("[W]e know of no case which holds that colleges and universities are subject to the supervision or review of the courts in the uniform application of their academic standards."); *Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir. 1976) ("Implicit in the student's contract with the university upon matriculation is the student's agreement to comply with the university's

7

rules and regulations, which the university clearly is entitled to modify so as to properly exercise its educational responsibility."); *Univ. of Miss. Med. Ctr. v. Hughes*, 765 So. 2d 528, 535 (Miss. 2000), *citing Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985) (acknowledging "the great reluctance, expressed by numerous courts, including the United States Supreme Court, to intervene in the academic context").

"The determination whether an enforceable contract exists, when based on the contract documents, is a question of law." *Kramer Assocs. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005), quoting *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 369 n.9 (D.C. 1990). Under District of Columbia law,[2] "[t]he party asserting the existence of an enforceable contract . . . bears the burden of proving that the parties entered into an enforceable contract." *Ponder v. Chase Home Fin., LLC*, 666 F. Supp. 2d 45, 48 (D.D.C. 2009) (citations omitted). A contract is valid only where there is "both (1) agreement as to all material terms and (2) intention of the parties to be bound." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995); *see also Ponder*, 666 F. Supp. 2d at 48, quoting *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1445, 1450 (D.C. Cir. 1996) ("The essential elements of a contract are 'competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation.'").

Here, plaintiff does not meet her burden of proving that the Graduate School Rules and Regulations constitutes a binding contract between her and Howard University. She does not

---

2   The District of Columbia's choice-of-law rules, which this Court must follow when exercising diversity jurisdiction, require the Court to consider "the governmental policies underlying the applicable laws and determine[] which jurisdiction's policy would be the most advanced by the application of its law to the facts of the case, taking into consideration (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered." *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 59 (D.D.C. 2010). Application of those factors here compels the application of District of Columbia law.

point to any language in the document that demonstrates Howard's intent to be bound by its terms. And she does not direct the Court to any other indication, such as signatures of the parties, that would demonstrate such intent.[3] *See* 3 Kevin F. O'Malley et al., *Fed. Jury Practice & Instructions* § 126:01 (6th ed. 2012) ("To be binding, a contract must include a manifestation of mutual assent to the terms and conditions of the contract. This is referred to as the 'meeting of the minds.' There must be a meeting of the minds; there can be no contract if only one party intends to be bound."). Rather, from the sections of the Graduate School Rules and Regulations that the parties have provided to the Court,[4] the document appears to be intended as a means for the university to communicate its expectations regarding academic conduct to its students. It does not appear that the university intended to bind itself to the handbook's provisions. *See, e.g.*, Graduate School Rules and Regulations at 16 ("The completion of minimum course requirements or credits does not guarantee receipt of the degree."); *id.* at 17; ("Students are expected to complete a doctoral degree within a maximum of seven calendar years from the date of initial registration in the program."); *id.* at 21 ("The responsibility for fulfilling these requirements on time is that of the student.").

Since the existence of a contract is an essential element of plaintiff's breach of contract claim for which she has the burden of proof, plaintiff has presented this Court with "a complete failure of proof concerning an essential element of the nonmoving party's case [which] necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Accordingly, Howard is entitled to a judgment as a matter of law on Count I of the amended complaint. *Id.*

---

3   Indeed, she does not even provide the Court with a complete copy of the handbook.

4   And these pages were not even submitted by plaintiff, but by defendant. Ex. 4 to Def.'s Mot.

### B. Plaintiff's Constructive Fraud Claim

In Count II, plaintiff alleges that Howard, through the action of its agent Dr. Stills, is liable for constructive fraud. Am. Compl. ¶¶ 32, 38–39. Plaintiff's amended complaint alleges that Dr. Stills "offered to get the appropriate signatures so that all of [plaintiff's] courses would continue to be viable" and that he "assured [her] in October 2009 that she could finish up all of her requirements and graduate by the spring of 2010." *Id.* ¶¶ 35–36. Plaintiff maintains that she relied on Dr. Stills's representation, that he failed to get the signatures, and that he failed to make her aware that taking a semester of leave from school would impact her subsequent ability to reenroll in courses. Pl.'s Opp. to Def.'s Supp. Mem. in Support of Def.'s Mot. for Summ. J. ("Pl.'s Supp. Opp.") [Dkt. # 28] at 4–6. Defendant argues in its motion for summary judgment that notwithstanding whatever Dr. Stills may have said – about which there is a clear factual dispute – plaintiff has failed to prove a fundamental element of a constructive fraud claim: the existence of a confidential relationship between plaintiff and Dr. Stills. Def.'s Mem. at 11. The Court agrees that plaintiff's case fails here as well.

To prevail on a constructive fraud claim, a plaintiff must demonstrate that a confidential relationship existed between her and the defendant. *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 461 (D.D.C. 1997). A confidential relationship exists where the defendant has gained the trust and confidence of the plaintiff, enabling the defendant to "exercise extraordinary influence" over her. *Id*; *see also Roberts-Doglas v. Meares*, 624 A.2d 405, 421 (D.C. 1992) (describing a confidential relationship as "a condition of psychological dependency"). The plaintiff bears a "difficult burden" to establish a confidential relationship. *Witherspoon*, 964 F. Supp. at 461. Among the relevant factors courts consider to determine whether a confidential relationship exists are the plaintiff's "mental capacity, age, education, business knowledge, and

the extent to which the alleged victim entrusted her affairs to the other party." *Goldman v. Bequai*, 19 F.3d 666, 674 (D.C. Cir. 1994).

Plaintiff does not present any evidence that suggests she was particularly vulnerable to fraud or to the influence of Dr. Stills. On the contrary, she was forty-nine years old when she began her studies at Howard, Mosby-Nickens Dep. at 31:10–12, and she was intelligent and well-educated enough to have been admitted to multiple doctoral degree programs in psychology. Mosby-Nickens Dep. at 24:16–25:6. Furthermore, plaintiff has not shown that Dr. Stills had unique access to information regarding the procedures for advancing to candidacy – plaintiff admits that she was aware of the requirement that all prerequisite courses be completed within seven years, and that failure to do so would result in her having to petition to have them restored. Mosby-Nickens Dep. at 114:16–21, 119:14–16. Plaintiff also recalls receiving a letter upon her admission to Howard, which stated: "Although your advisor will provide you with basic information, it will be your responsibility as a grad student to meet deadlines and to be knowledgeable of graduation requirements." Mosby-Nickens Dep. at 182:13–183:6.

Moreover, in her deposition, plaintiff denied that Dr. Stills was even acting as her advisor when he allegedly assured her that she could finish up her requirements and graduate. Mosby-Nickens Dep. at142:7–144:9; Mosby-Nickens Aff. ¶¶ 2–4. Rather, she claims that Dr. Stills was removed as her advisor in 2000 – nine years earlier. *Id.* Although Dr. Stills was the chair of plaintiff's department with knowledge of the program requirements, that alone does not establish

that he had the kind of influential, confidential relationship with plaintiff that could provide the basis for a constructive fraud claim.  *See* Mosby-Nickens Dep. at 142:12–21.[5]

Since plaintiff has failed to offer proof of a confidential relationship between her and Dr. Stills – an essential element of her constructive fraud claim – the Court finds that defendant is entitled to judgment as a matter of law on Count II of the amended complaint.

## CONCLUSION

Because plaintiff has failed to identify evidence of essential elements of both causes of action in her amended complaint, the Court will grant defendant's motion for summary judgment in full.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  May 23, 2012

---

5   The Court also has doubts as to whether plaintiff has satisfied the detrimental reliance element of constructive fraud.  Plaintiff alleges that Dr. Stills's advice to her was: "don't forget, just register under the one-credit, self-directed study course under me to maintain your student status while you're working on your dissertation and your course restorations."  Mosby-Nickens Dep. at 118:15–119:1.  Plaintiff, however failed to heed this advice.  In fact, she admits in her sworn affidavit that she was dropped from the Ph.D. program only when she "failed to register for a course at Howard University."  Mosby-Nickens Aff. ¶ 8; *see also* Pl.'s Opp. at 3 ¶ 3 ("At no time was [plaintiff] dropped from her Ph.D. program at Howard University until she failed to register for courses one semester in 2009.").  She also admits that she was not aware of anything preventing her from re-enrolling in the courses that she had taken, but that had become unviable, before she was dismissed from the program.  Mosby-Nickens Dep. at 120:2–8.